UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIEDRE TREVIZO,

    Plaintiff,

vs.                                                CASE NO. 3:09-cv-543-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (Commissioner) that discontinued her disability insurance benefits (DIB). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #13, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #14, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated August 21, 2009 (Doc. #8). The Commissioner has filed the transcript of the of the underlying administrative proceedings and evidentiary record  (hereinafter referred to as "Tr." followed by the appropriate page number).

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not

benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **AFFIRMED**.

**I. PROCEDURAL HISTORY**

This case is an appeal under Title 42 U.S.C. § 405(g) of a final administrative decision of the Commissioner of Social Security, which terminated Mrs. Trevizo's disability benefits. Mrs. Trevizo filed a claim for a period of disability and DIB in September 1999, and was found disabled with an onset date of disability of October 1, 1998 (Tr. 32). At that time it was determined that Mrs. Trevizo's major depression and mental impairment prevented her from performing any work at any level of exertion due to non-exertional limitations. *Id.*

In March of 2006, the Social Security Administration (SSA) determined that Mrs. Trevizo was no longer disabled and that her benefits would cease (Tr. 59). She requested reconsideration of this decision on March 13, 2006 (Tr. 64-65). The disability hearing officer determined that Mrs. Trevizo was able to work and denied reconsideration on December 19, 2006 (Tr. 80). Mrs. Trevizo then requested a hearing before an administrative law judge (ALJ) on January 23, 2007 (Tr. 90). A hearing was held before ALJ John D. Thompson, Jr., on June 20, 2007 (Tr. 578-628). Mrs. Trevizo testified at the administrative hearing, as did vocational expert (VE) Paul Dolan. At the time of the administrative hearing, Mrs. Trevizo was represented by her current counsel of record, Mr. Jack Gibney, Esq. As set forth in his decision dated October 10, 2007, ALJ Thompson found that Mrs. Trevizo was no longer disabled (Tr. 10-19). The Appeals Council denied

Mrs. Trevizo's request for review of the ALJ's decision on May 27, 2009 (Tr. 5-7). Having exhausted all administrative remedies, Mrs. Trevizo timely filed a complaint in this Court.

## II. STATEMENT OF THE FACTS

Mrs. Trevizo was born on November 13, 1959, making her 47 years old as of the date of the administrative hearing (Tr. 581). Mrs. Trevizo has a high school education and past relevant work as an aircraft mechanic, a shoe sales clerk and a janitor (Tr. 582-587). On September 25, 2000, ALJ James R. Russell determined that Mrs. Trevizo had not performed substantial gainful activity since her onset date of disability, and found that she suffered from major depression and mental impairment (Tr. 31-32). Disability benefits were awarded in that determination.

In March 2006, a continuing disability review was conducted (*see* Tr. 59-63). Based on reports received in January 2006 from Mrs. Trevizo's treating psychiatrist, Dr. Russell Scott Findley, and the Orange Park Medical Center Behavioral Health Intensive Outpatient Program, it was determined Mrs. Trevizo's medical condition had improved to the point she could perform work related activities as of March 1, 2006 (Tr. 59-63). Because September 25, 2000 was the last favorable decision continuing Mrs. Trevizo's DIB, ALJ Thompson used that date as the comparison point decision (CPD) date (Tr. 14).

Subsequent to the June 2007 hearing, ALJ Thompson issued an unfavorable decision in which he determined that Mrs. Trevizo's impairments had decreased in severity as of March 1, 2006 and her disability ended (Tr. 15). "After careful consideration of the entire record," the ALJ found that Mrs. Trevizo had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has no impediment to her ability to understand, remember and carry out

simple job instructions; she has [] 'moderate' limitations in her ability to understand, remember and carry out detailed but not complex instructions; make judgments on detailed but not complex work-related decisions; interact appropriately with the general public, supervisors and coworkers; and respond appropriately to usual work situations and to changes in a routine work setting." *Id.* The ALJ specifically found that Mrs. Trevizo's RFC as of March 1, 2006 was less restrictive than the one she had at the time of the CPD (Tr. 18).

The ALJ then determined that Mrs. Trevizo had regained the capacity to perform her past relevant work as a janitor (Tr. 19). The ALJ further determined that in addition to performing past relevant work, Mrs. Trevizo could perform other jobs identified by the vocational expert, including such skilled and semiskilled jobs as an information clerk, a general clerk, telemarketer, ticket seller, office helper and a food service worker in a hospital (Tr. 19).

### III. THE STANDARD OF REVIEW

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

**IV. SOCIAL SECURITY ACT STANDARD FOR DISCONTINUATION OF DISABILITY BENEFITS**

A termination of previously awarded disability benefits is governed by 42 U.S.C. § 423(f), which provides in relevant part that benefits may only be terminated if there is *substantial evidence* to support a finding of medical improvement related to an individual's ability to work and the individual is *now* able to engage in substantial gainful activity. 42 U.S.C. § 423(f) (emphasis added).

The Commissioner has established an eight step sequential process used to determine whether medical improvement has occurred and whether a claimant's disability benefits should cease.  20 C.F.R § 404.1594(f)[1].  The *first* question is whether the claimant is engaged in substantial gainful activity.  *Id.*  If not, the *second* question is whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment in the Listings.[2]  *Id.*

If the claimant's impairments do not meet or equal a listed impairment, the *third* step is to determine whether there has been medical improvement.  *Id.*  If so, the *fourth* question is whether the claimant's improvement is related to his or her ability to work based upon the claimant's residual functional capacity.  *Id.*  The *fifth* question is whether any exceptions apply under subsections (d) (relating to advances in medical treatments and/or therapies that may have improved a claimant's condition etc.) and (e) (relating to the prior determination of disability being found in error or was fraudulently obtained etc.)  *Id.*

At the *sixth* step, if it has been determined that there has been medical improvement, it must then be determined whether all the claimant's *current* impairments in combination are severe.  *Id.* (emphasis added).  If it is found that the claimant's current

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition.

[2]The Listing of Impairments (the Listings) is in appendix 1 of 20 C.F.R. Pt. 404 Subpt. P. It describes for each of the major body systems impairments that the Commissioner considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a). The specific listings follow the introduction in each body system, after the heading, Category of Impairments. Within each listing, the objective medical and other findings needed to satisfy the criteria of that listing are specified. An  impairment meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525 (c)(3).

impairments are severe, it must then be determined, at the *seventh* step, whether given current impairments, the claimant is able to engage in the type of work he or she had done in the past.  *Id.*

At the *eighth* and final step, if the claimant is not able to engage in the type of work done in the past, the SSA must consider, given the claimant's *current impairments*, age, education, and past work experience, whether the claimant is able to engage in other substantial gainful activity.  *Id.* (emphasis added).

## V. ISSUES AND ANALYSIS

The question presented is whether the ALJ erred when he rejected the opinion evidence of Dr. Martinez to make a determination that Mrs. Trevizo was no longer disabled under 42 U.S.C. § 423(f) (*see generally*, P's Brief).  In this regard, Plaintiff specifically challenges the weight the ALJ afforded to the opinion evidence of Dr. Martinez and, alternatively, suggests the ALJ failed to order a necessary consultative psychiatric examination of Plaintiff's condition (*see generally*, P's Brief).

In the instant case, the ALJ found at the sixth step of the disability review evaluation that Mrs. Trevizo had a decrease in the medical severity of her impairments (Tr. 15). Relying in part on the March 7, 2006 assessment by a DDS reviewing psychologist, Dr. Stephen Wise, the ALJ found the medical evidence supported his determination that Mrs. Trevizo had the ability to perform simple and basic tasks, and to maintain attention and concentration for routine uncomplicated tasks for 2-hour periods during an 8-hour workday (Tr. 15; *see also* Tr. 423-25).  At the seventh step, the ALJ found Mrs. Trevizo was capable of returning to her past relevant work as a janitor (Tr. 19).

Mrs. Trevizo's counsel argues the ALJ erred in not affording the "appropriate weight to Dr. Martinez" (P's Brief at 5). The Defendant counters that this claim lacks merit as the ALJ properly evaluated the opinion evidence from Dr. Martinez and discounted it because it was inconsistent with the other evidence of record (Defendant's Brief at 6). The Court's independent review of the ALJ's decision and the underlying administrative record reveals the ALJ clearly had good cause to discount Dr. Martinez's opinion, which essentially stated that Mrs. Trevizo had such extreme limitations she could not function (*see* Tr. 18, 561-64).

A treating physician's, or psychiatrist's, opinion will be given controlling weight if the opinion on "the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). When good cause is shown to the contrary, a treating physician's opinion may be given less weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may, however, discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Further, the Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, *or* when the treating physician's opinion is inconsistent with his or her own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (emphasis added). If an ALJ elects to *disregard* the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. *Id.* (emphasis added).

In this case, Dr. Emanuel Martinez, one of the three treating psychiatrists of record for Mrs. Trevizo, completed a Medical Assessment of Ability to Do Work Related Activities

(Psychological) on August 2, 2007 at the request of Mrs. Trevizo's attorney (Tr. 561-64). This assessment included notations of extreme limitations in Mrs. Trevizo's ability to function, specifically noting she had rapid mood swings (Tr. 561-564). In considering this evidence as Dr. Martinez's expressed opinion of Mrs. Trevizo's medical condition, the ALJ found the opinion was inconsistent with treatment notes from Dr. Martinez (and by inference, from those of Dr. Martinez's staff), as well as the other medical evidence of record (Tr. 17-18). Further, the ALJ properly noted Mrs. Trevizo did not have the treating relationship directly with Dr. Martinez that would warrant deferential weight be given to his opinion.[3] These two findings are supported by substantial evidence in the record.

From February 1995 through October 1998, Mrs. Trevizo saw Dr. Thomas Wikstrom, an independent psychiatrist (Tr. 237-70), and a nurse practitioner at the Naval Hospital in Jacksonville (Tr. 271-294). Mrs. Trevizo's psychiatric symptoms waxed and waned throughout this period. She was found disabled under the Social Security Act as of October 1, 1998 by an ALJ's decision dated September 25, 2000 (*see* Tr. 30-34).

In September 1999, Mrs. Trevizo began seeing Dr. Scott Findley, a psychiatrist associated with the Orange Park Medical Center (*see* Tr. 295-317, 353-78, 383-422). Mrs. Trevizo treated with Dr. Findley until his death sometime in 2006 (*see* Tr. 526, Dr. Findley's progress notes showing a change in Mrs. Trevizo's medication on April 12, 2006; Tr. 591, Plaintiff's testimony that Dr. Findley passed away around Thanksgiving 2006). Dr. Findley's

---

[3]It is established within the Eleventh Circuit that the opinion of a treating physician of record who has seen a patient on only one occasion is not given deferential weight. *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). In this case, as discussed *infra*, it is unclear if Dr. Martinez ever saw Mrs. Trevizo face to face, or if he actually initiated treatment for her.

most recent treatment notes indicated Mrs. Trevizo's depressive symptoms had decreased (Tr. 407), she had noted improvements in her mood, she was no longer crying during group therapy sessions, and she was excited to be discharged from the intensive outpatient program with a brighter affect and an optimistic mood  (Tr. 410, 417).

The ALJ considered all of Mrs. Trevizo's progress notes of record, which included the notes of Dr. Findley from October 1999 until November of 2005 (Tr. 489-507, 509, 512). The notes provided by Dr. Findley support the ALJ's finding that Mrs. Trevizo's mental impairments had decreased medical severity.  On four separate occasions, Dr. Findley indicated partial resolution of the major depression (Tr. 491, 503, 504, 506).  Furthermore, Dr. Findley's notes indicate mood stabilization beginning in September of 2000 (Tr. 493; *see also* Tr. 494, 502, 505).

The ALJ's decision reflects his consideration of the notes from Dr. Martinez's office, which were signed by Susan Angel, ARNP[4] (Tr. 18, 480-86, 514-24, 565-567, 569-577). On only two occasions, Dr. Martinez stamped Susan Angel's notes, thereby indicating he reviewed the diagnosis and recommendations, and he approved a medication change (Tr. 482-485, 576).  Dr. Martinez reviewed the initial psychiatric/psychosocial assessment of Mrs. Trevizo on August 29, 2006 (Tr. 482–85) and the progress note on February 26, 2007 that showed a use of Xanax as medication (Tr. 576).

At the initial office visit, Ms. Angel noted Mrs. Trevizo had a history of frequent mood changes (Tr. 482-485).  In September 2006, Mrs. Trevizo expressed to Ms. Angel that she was no longer having mood swings (Tr. 481).  In October of 2006, Mrs. Trevizo expressed

---

[4]ARNP is an acronym for Advanced Registered Nurse Practitioner. Found at http://www.medilexicon.com/medicalabbreviations.php (last visited September 16, 2010).

to Ms. Angel that she was doing well (Tr. 481). In December of 2006, Ms. Angel's notes indicated that Mrs. Trevizo's moods were stable (Tr. 577). The following month, the notes indicated that Mrs. Trevizo's mood was okay (Tr. 577). In February 2007, Mrs. Trevizo indicated she was having mood swings (Tr. 576). She also told Ms. Angel that her mother had passed away and she was fighting with her husband (Tr. 576). Ms. Angel changed Mrs. Trevizo's medication during the February visit (*see* Tr. 576).

In March and April of 2007, Mrs. Trevizo stated she was feeling better, but couldn't sleep (Tr. 573-574). In early May 2007, Mrs. Trevizo expressed to Ms. Angel that she was doing better and her mood was better, and that she was also sleeping at night (Tr. 573). Almost three weeks later, the notes indicate that Mrs. Trevizo's mood was "okay," although she physically felt bad (Tr. 572). Ms. Angel's notes also indicate that Mrs. Trevizo experienced medication side effects during the late May visit (Tr. 572). On June 21, 2007, one day after the hearing with the ALJ Thompson, Mrs. Trevizo was seen by the nurse practitioner who noted Plaintiff was not crying everyday, although her sleep patterns were irregular and she had little desire to engage in activities (Tr. 571). The last treatment note from July 31, 2007 contained the diagnosis that Mrs. Trevizo had a major depressive cycle, however Ms. Angel further characterized Plaintiff's mental state by finding "her manic[,] which is mainly dysphoric" (Tr. 566).[5]

The ALJ determined that Mrs. Trevizo's testimony established that she rarely saw Dr. Martinez after her initial visit and that most of her meetings were with Susan Angel,

---

[5]Dysphoria reflects a feeling of unpleasantness or discomfort. Thomas Lathrop Stedman, *Stedman's Medical Dictionary* 479 (William R. Hensyl et al. eds., 25th ed., 1990).

11

ARNP (Tr. 18, 592-94).[6] The ALJ explained in his decision that progress notes provided by Susan Angel, along with Mrs. Trevizo's activities of daily living, support a different conclusion than is reflected in Dr. Martinez's assessment (Tr. 18).

After considering the all medical evidence, and the mental assessments of state agency consultants, the ALJ determined that the evidence supported finding Mrs. Trevizo's moods had stabilized and she had no physical limitations, but she did have the moderate mental limitations as noted in the residual functional capacity assessment (Tr. 18).[7]

In this case, the ALJ Thompson explicitly rejected the Dr. Martinez's opinion of Mrs. Trevizo's abilities to perform work activities and stated his reasons for doing so (Tr. 18). First, he found Dr. Martinez's opinion was inconsistent with his own treatment notes, which presumably include the notes of nurse practitioner Susan Angel from Dr. Martinez's office (Tr. 17-18). As discussed above, this finding is supported by substantial evidence. Next, the ALJ noted the actual relationship between Dr. Martinez and Mrs. Trevizo was very limited according to Mrs. Trevizo's own testimony, which called into question Dr. Martinez's ability to complete the assessment form due to his rare interaction with Mrs. Trevizo (Tr. 17-18). This finding is supported by substantial evidence in the record. And finally, the ALJ noted his consideration of the other medical and opinion evidence of record, including that of the reviewing state agency psychologists, and found Dr. Martinez's opinion was not

---

[6]The Court's independent review of the record finds the progress notes in the record indicate Mrs. Trevizo saw only Susan Angel during her office visits (Tr. 481-485, 571-577).

[7]The ALJ gave some weight to the Physical Residual Functional Capacity Assessment completed by Dr. Janet Attlesey on October 11, 2006, which determined that Mrs. Trevizo had a capacity for a wide range of medium work activity (Tr. 472-479, Exhibit 24F), but noted that Plaintiff was not alleging disability due to any physical impairment (Tr. 18).

supported by this evidence (Tr. 18). This finding is also supported by substantial evidence in the record. To this Court it is clear the ALJ considered the record as a whole and had good cause to reject the opinion of Dr. Martinez as stated in the August 2, 2007 Medical Assessment of Ability to Do Work Related Activities (Psychological) (Tr. 561-64). *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

In the alternative, Plaintiff's counsel argues that the ALJ erred by not requiring a consulting psychiatrist examine Mrs. Trevizo in order to properly develop the record (*see* Doc. #13, P's Brief). More specifically, Plaintiff argues that if the Court decides to reject the opinion of a treating physician, i.e., that of Dr. Martinez, a consultative examination with a psychiatrist should have been ordered by the ALJ before making his decision (*see* P's Brief at 7).

As in every case, the ALJ clearly has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Graham v. Apfel*, 129 f.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). That duty can extend to ordering additional medical tests and exams *if* a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512(f), 404.1517 (emphasis added). Evidentiary gaps prevent the ALJ from making an informed decision. *Graham v. Apfel*, 129 F.3d at 1422-23.

In the instant case, Mrs. Trevizo provided medical records dating from February 1995 (Tr. 270) through July 2007 (Tr. 566). During the year immediately prior to the ALJ's decision, Mrs. Trevizo supplied evidence of monthly visits with Susan Angel, ARNP (Tr. 481-485, 571-577). Contrary to an assertion otherwise, this record does not reflect

13

evidentiary gaps that would render the ALJ as being ill informed and therefore unable to make a proper determination. *Graham v. Apfel*, 129 F.3d at 1422-23. The record contains evidence for and against Mrs. Trevizo's arguments, including the most recent medical note indicating a major depression cycle (Tr. 566). However, Mrs. Trevizo's medical sources have provided the ALJ with sufficient medical evidence to make a disability determination. Because the record provides sufficient medical evidence, it was not necessary for the ALJ to require a psychiatrist consult with Mrs. Trevizo in order to fully and fairly develop the record.

## VI. CONCLUSION

The ALJ is required to weigh the evidence of record, and apply the applicable standards set forth in 20 C.F.R. § 404.1527(d). If an ALJ elects to *disregard* the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. *See Phillips v. Barnhart*, 357 F.3d at 1240-41.

In the instant case, the ALJ explicitly rejected Dr. Martinez's opinion after finding it was inconsistent with his own treatment notes and other evidence of record. The Court finds the notes of Dr. Findley and the notes of Susan Angel, ARNP, constitute substantial evidence in the record for ALJ Thompson to reject Dr. Martinez's opinion as found in the medical assessment identifying Mrs. Trevizo has having rapid mood swings and an extreme inability to function (Tr. 561-564). The ALJ has properly noted inconsistencies between Dr. Martinez's opinion and the notes provided by his office.

The Court further finds that the record contains sufficient medical evidence upon which the ALJ could make an informed decision regarding Plaintiff's disability determination. *Graham v. Apfel*, 129 F.3d at 1422-23.

Accordingly, for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of September, 2010.

Copies to all counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge